IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVONTE LOVE,

                Petitioner,

v.                                            OPINION and ORDER

DYLON RADTKE[1],                                 19-cv-929-jdp
Warden, Green Bay Correctional Institution,

                Respondent.

---

    DaVonte Love, appearing pro se, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Love is in custody at the Green Bay Correctional Institution, where he is serving a prison sentence on judgments of conviction for second-degree sexual assault and felony intimidation of a witness entered in Milwaukee County Case Nos. 2011CF4672 and 2012CF669. Love contends he is in custody in violation of his Sixth Amendment right to a speedy trial.[2] But he fails to meet his heavy burden of showing that the Wisconsin Court of Appeals unreasonably determined the facts or unreasonably applied federal law when it rejected this claim on direct appeal. Accordingly, I must deny his petition for habeas relief.

---

[1] I have amended the caption to reflect that Dylon Radtke, warden at Green Bay Correctional Institution, is the proper respondent.

[2] In his petition, Love also asserted a claim that the evidence at trial was insufficient to support his conviction for witness intimidation. However, he has not discussed that claim in either of his briefs in support of his petition. Accordingly, I find he has either abandoned or forfeited that claim. *See Braasch v. Grams*, No. 04-CV-593, 2006 WL 581201, at *12 (E.D. Wis. Mar. 8, 2006) (citing *Duncan v. State of Wis. Dept. Health and Family Serv.*, 166 F.3d 930, 934 (7th Cir. 1999)) (arguments that a party fails to develop in any meaningful manner will be deemed waived or abandoned).

BACKGROUND

Thes facts are drawn from the State's brief, Dkt. 46, at 14–19, and from transcripts in the record and are not in dispute.

Love was charged in a criminal complaint in the Circuit Court for Milwaukee County with second-degree sexual assault. He made his initial appearance on that charge on April 14, 2010. His preliminary hearing was timely held one week later, on April 21, 2010.

Trial was scheduled for August 2, 2010. But at a pretrial motion hearing on July 12, 2010, the prosecutor notified the court that police had learned the previous week that Love had been making telephone calls to witnesses from the jail, trying to convince them not to appear in court. The state said it needed time to retrieve and review the recordings of Love's calls and possibly to add new charges. Then, at another pretrial hearing on July 19, 2010, the state moved to adjourn the August 2 trial because the lead detective on the case was scheduled for vacation that week. Defense counsel said he did not object to the adjournment. Trial was rescheduled for November 15, 2010.

Love then moved to fire his attorney (Johnson). But at a hearing held on counsel's motion to withdraw on August 5, 2010, Love changed his mind and decided to keep Attorney Johnson on the case. The trial court advised Love that the trial date was set for November 15, but his statutory 90-day speedy trial time frame would expire on November 3. Love said he wanted his trial before November 3. So the court rescheduled the trial for September 29, 2010.

At a pretrial hearing on September 21, 2010, the state asked for an adjournment to further investigate the more than 100 telephone calls Love made from the jail for a possible witness intimidation charge. The state also noted that on August 9, 2010, Love had been sentenced in a different case to serve 18 months in prison for substantial battery. The trial

court granted the adjournment after finding that Love had "forfeited" his speedy trial demand by allegedly making "dozens and dozens" of telephone calls in an attempt to prevent the victim from testifying. The court also pointed out that Love was already in custody on another offense for 18 months.

Trial was rescheduled for February 7, 2011, but was once again adjourned. At a hearing on February 18, 2011, the court explained that it had adjourned the February 7 hearing date because: (1) the prosecutor had another firm speedy trial scheduled on that day; (2) Love remained in custody on another offense until August 2011; and (3) Love wanted a new lawyer. The court explained to Love that, by firing his lawyer, a new trial date would have to be set and he would forfeit his right to a speedy trial. Love insisted that he wanted both a new lawyer and a speedy trial. The court explained to Love that he could renew his speedy trial demand once his new lawyer was appointed. It also told him that the remedy for a statutory speedy trial violation would be Love's release on personal recognizance, but Love was not entitled to that relief because he was serving another sentence. The court granted attorney Johnson's motion to withdraw.

New counsel was appointed and trial was rescheduled for June 13, 2011. But at a June 1, 2011, motion hearing, Love's new attorney (Stein) moved to withdraw because of a breakdown in communications and because Love had filed ethics complaints against him with the Wisconsin Supreme Court's Office of Lawyer Responsibility (OLR). The trial court granted Stein's motion to withdraw and struck the trial date, after observing that Love "isn't going to be happy with anyone."

Attorney Hart was appointed to represent Love and trial was rescheduled for September 26, 2011. Hart appeared for Love at a pretrial hearing on September 15, 2011. But on

3

September 26, the scheduled trial date, Attorney Hart said that Love had filed an OLR complaint against him and that he might have to withdraw. After a recess, the prosecutor then announced that the State wanted an adjournment because it had in the past few days discovered new evidence pertinent to Love's efforts to prevent the victim from testifying. Love disputed the State's assertion that it had not known of the evidence earlier and he objected to an adjournment. He also said he wanted Hart to remain on the case as his lawyer, notwithstanding the OLR complaint he had filed against him. The court took the matter under advisement until the next day.

At the next day's hearing on September 27, 2011, the State renewed its motion to adjourn the trial. In addition to needing more time to investigate the new information relative to Love's jail calls, the prosecutor told the court that he had just learned that, for unexplained reasons, none of the witnesses had been subpoenaed by the district attorney's office. Needless to say, the trial court was extremely displeased with this latest development. *See* Dkt. 41-2 (transcript of September 27, 2011 hearing). The court excoriated the district attorney's office, expressed its frustration with having the trial delayed once more, and ultimately denied the State's request for an adjournment. The prosecutor then moved to dismiss the case without prejudice and for an order holding Love in custody for 72 hours to allow the State to reissue the complaint. Defense counsel asked the court to dismiss the case with prejudice. The trial court denied the defense's motion and granted the State's request that the dismissal be without prejudice, and ordered Love to be held for 72 hours.

The State reissued the sexual assault charge and Love was again bound over for trial after a preliminary hearing on October 21, 2011. Love was eventually tried on the sexual assault charge and a later-added witness intimidation charge on July 30, 2012. During this time period,

4

there were more delays, caused by Love filing complaints against and in one instance physically assaulting his appointed attorney. The jury found Love guilty of both charges.

Love, represented by new counsel, filed a postconviction motion. He asserted two grounds for relief: (1) he was denied a speedy trial; and (2) his trial attorney was ineffective for not requesting a jury instruction on "attempt" in addition to the pattern instruction on the elements of witness intimidation. On May 5, 2017, the trial court issued an oral decision denying the motion. With respect to the speedy trial claim, the court found that Love had caused much of the delay by repeatedly firing, and in one case assaulting, his attorneys. The court also found that the State had overcome the presumption of prejudice that applies when the delay exceeds one year.

Love, still represented by counsel, appealed. The Wisconsin Court of Appeals agreed with the trial court that most of the delay was attributable to Love. The court noted that Love had not disputed, either specifically or generally, the state's detailed discussion in its response brief of the delays or its contention that most of them were attributable to Love. Thus, accepting the State's attribution of the delays, the state appellate court found "application of the balancing test readily leads to a conclusion that Love's right to a speedy trial was not violated." Dkt. 33-2:6, ¶¶ 19–20.

Love then filed a petition for discretionary review with the Wisconsin Supreme Court. The Wisconsin Supreme Court denied the petition on November 13, 2018.

ANALYSIS

Federal habeas relief is available to state prisoners who show they are in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

5

Further, under the Antiterrorism and Effective Death Penalty Act of 1996, federal courts must accord special deference to conclusions reached by state courts. A federal court may not grant a state prisoner's application for a writ of habeas corpus unless the state court's adjudication of his claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "'Unreasonable' in [the AEDPA] context means more than just incorrect; it means something . . . lying well outside the boundaries of permissible differences of opinion." *Corcoran v. Neal*, 783 F.3d 676, 683 (7th Cir. 2015) (internal quotation marks omitted). This standard of review is applied to the decision of the last state court to adjudicate a given claim on the merits, which in this case is the Wisconsin Court of Appeals' decision. *See Williams v. Bartow*, 481 F.3d 492, 497–98 (7th Cir. 2007).

Love asserts that he is in custody in violation of the Sixth Amendment's guarantee of a speedy trial. The key Supreme Court decision examining the constitutional right to a speedy trial is *Barker v. Wingo*, 407 U.S. 514 (1972). In *Barker*, the Court held that whether a defendant's right to a speedy trial has been violated depends on a balancing of the following factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Id*. at 530. No single factor is dispositive. *Id*. at 533. Further, in examining the reasons for the delay, courts are to assign different weights to different reasons. *Id* at 531. For example,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be

6

> considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id*.

As Love appears to concede, the Wisconsin Court of Appeals properly recognized that his speedy trial claim was governed by *Barker*'s four-part balancing test. Dkt. 33-2, at ¶18 (citing *State v. Urdahl*, 2005 WI App 191, §11, 286 Wis. 2d 476, 704 N.W. 2d 324, adopting *Barker* standard). Thus, the only issue for this court is whether the Wisconsin Court of Appeals reasonably determined that Love's speedy trial right was not violated. If the court took the *Barker* rule seriously and produced an answer "within the range of defensible positions," then Love is not entitled to relief. *Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000). *See also Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir. 1996) ("[W]hen the constitutional question is a matter of degree, rather than of concrete entitlements, a 'reasonable' decision by the state court must be honored.").

Love has failed to show that the Wisconsin Court of Appeals unreasonably applied *Barker* in rejecting his speedy trial claim. As an initial matter, Love appears to concede that he was at fault for the delays from the time the State reissued the sexual assault charge in late September 2011 until his trial on July 30, 2012. But Love argues that his speedy trial right had already been violated by September 27, 2011, and therefore the trial court erred when it denied his motion to dismiss the sexual assault charge with prejudice at the September 27, 2011, hearing. *See* Dkt. 41-1 (charting delays from April 14, 2010 to September 26, 2011); Dkt. 47 (Love's reply brief), at 2 ("The first speedy trial ended on 9-27-11 by law."). According to Love, from the time he was first charged with sexual assault in April 2010 to the time the State dismissed the charge in September 2011, the State was responsible for most of the delay, either

7

because its detective was unavailable, because it wanted to review evidence to possibly add a witness intimidation charge, because the prosecutor had another trial, or because it had failed to subpoena its witnesses. In Love's calculation, the State's delays in the first case added up to somewhere between 226 and 357 days. Dkt. 47, at 1–2.

The Wisconsin Court of Appeals acknowledged Love's argument, but it disagreed that the bulk of the delay should be attributed to the State. Dkt. 33-2, ¶¶ 19–20. It pointed out that the State had argued in its response that most of the delays during this period should be attributed to Love or were neutral, and Love had not disputed this attribution in its reply brief. *Id*. at ¶ 20. Accordingly, the court found that Love had conceded that the State's attribution was correct.

The court of appeals' determination that Love was responsible for the bulk of the delay was not unreasonable. Love does not deny that he did not contest the State's calculation of the delay periods or its assertion that only 160 days of delay were the State's fault, even though he had the opportunity to do so in his reply brief. Further, he does not deny that he contributed to some of the delay in the first case by filing complaints against his lawyers. Accordingly, the court of appeals reasonably deemed the matter undisputed and accepted the State's argument. *See State v. Chu*, 2002 WI App 98, ¶ 54, 253 Wis. 2d 666, 691, 643 N.W.2d 878, 889 (arguments not disputed on reply are deemed admitted).

Regardless, even if I accept Love's contention that the State bore more responsibility than he did for the delays during the period before the case was dismissed and refiled, I still find the Wisconsin Court of Appeals acted reasonably in rejecting his speedy trial claim. As noted above, the reason for the delay is only one of the factors in the *Barker* analysis. Another factor is whether the delay resulted in prejudice to the defendant. In assessing prejudice, the

court considers three interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532.

Love has not shown that any of these interests were impaired in his case. First, Love was in prison on an unrelated substantial battery conviction during much of the time before the State refiled the charges in late September 2011. So he did not suffer any oppressive pretrial incarceration as a result of the delay. Second, Love does not suggest that any evidence regarding either charge was lost, or that any witnesses became forgetful or were unavailable due to the delays in his case. So there is no basis to find that his trial defense was hampered by the delay. Third, Love asserts cursorily that he suffered anxiety and concern, but his own contributions to the delays undermine that assertion. For all these reasons, I conclude that the Wisconsin Court of Appeals' determination that Love was not denied his constitutional right to a speedy trial lies well inside the boundaries of permissible differences of opinion. In light of this conclusion, it is unnecessary to consider the State's alternative argument that Love procedurally defaulted his claim by failing to raise it in his state supreme court petition for review.

In sum, showing that a state court's decision is unreasonable when the test involved is a flexible one like *Barker* is a very high burden. Love does not come close to meeting it. His application for habeas relief must be denied. Because I find that jurists of reason would not disagree with this conclusion, I decline to grant him a certificate of appealability under 28 U.S.C. § 2253(c)(2). *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

ORDER

DaVonte Love's petition for a writ of habeas corpus, Dkt. 1, is DENIED. No certificate of appealability will issue.

Entered March 29, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge